IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

S))))))))))))))Q
No. 91-1494
S))))))))))))))Q

OMER GILBERT PETE,

Plaintiff-Appellant,

versus

DON METCALFE, ET AL.,

Defendants-Appellees.

S))))))))))))))))))))))))Q
Appeal from the United States District Court for the
Northern District of Texas
S))))))))))))))))))))))))Q

(November 16, 1993)

Before GARWOOD and DEMOSS, Circuit Judges, and DUPLANTIER, District Judge.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Omer Gilbert Pete (Pete) appeals the dismissal of his 42 U.S.C. § 1983 civil rights action against various defendants arising out of his arrest, prosecution and incarceration for sexual assault.  We affirm.

## Facts and Proceedings Below

Pete alleged that sometime in early 1985, Dudley Perry (Perry), a Mesquite, Texas, police officer, confronted Pete with a

_____

[*]    United States District Judge, Eastern District of Louisiana, sitting by designation.

charge by his daughter, Trellis, that Pete had raped her on July 3, 1982. Pete explained to Perry that he had been in a severe accident on June 27, 1982, that had physically incapacitated him for several months. Perry confronted Pete again sometime later and stated that Trellis had changed her story and now recalled that Pete had raped her in April or May of 1982. This second time proved to be outside the limitations period for criminal charges.

On May 12, 1985, Pete was arrested and charged with multiple felony offenses, including sexual assault of his younger daughter, Samantha. The day after Pete's arrest, Perry showed Pete what purported to be a signed statement by Samantha accusing Pete of sexually assaulting her. Perry boasted to Pete that he (Perry) had been after Pete for ten years and had finally gotten him. Pete noticed at the time, however, that Samantha's alleged statement was not in Samantha's handwriting, but in Trellis' handwriting, and that Samantha's signature appeared to have been pasted onto the document and photocopied.

According to Pete, Perry and Dennis Cox (Cox), an investigator for the Dallas County District Attorney's Office, had conspired with Trellis to falsely accuse Pete. Also according to Pete, it was Perry who persuaded Samantha to fabricate her charges of sexual assault against Pete by convincing her that Pete had murdered his wife (Samantha's mother), and would kill Samantha as well unless she cooperated in having Pete sent to jail.[1]

---

[1] According to Pete, after he was finally released from prison he was able to speak to his daughter Samantha, at which point she admitted fabricating the sexual assault charge against him. In an affidavit executed by Samantha Pete on February 18, 1990, she admitted to fabricating the accusations at the behest of Perry,

Pete retained attorneys Don Metcalfe (Metcalfe) and Paul Fourt (Fourt) to represent him. Pete was released on bail on May 14, 1985, but was re-incarcerated shortly thereafter when the court increased his bail. Pete posted bond and was again released on July 29, 1985.

Pete was convicted of the charges against him and sent to a Texas Department of Corrections (TDC) facility to serve his sentence. On his direct appeal, Pete's conviction was reversed and remanded for another trial by the Texas Fifth District Court of Appeals in Dallas on May 7, 1986. The State petitioned the Texas Court of Criminal Appeals for review; the Court of Criminal Appeals denied the petition. Pete was transferred from the TDC facility back to the Dallas County Jail on April 23, 1987, pending his retrial.

Pete then again attempted to secure his release on bail from the Dallas county jail. This release was precluded, however, by a TDC administrative "hold" that had been placed on him. According to Pete, at this point Metcalfe and Fourt did nothing to help him secure his release and because of this, and because of their poor performance in representing him, Pete fired them.

Prior to Pete's second trial, the court appointed attorney Sue Gorham (Gorham) to represent him. Gorham arranged a plea bargain for Pete whereby he would plead *nolo contendere* to the charges and receive a sentence of the two years he had already served in prison. Pete accepted the plea bargain.

---

Cox, and her sister, Trellis.

3

Even after the plea bargain was accepted by the court and Pete's sentence set at time served, however, he was unable to secure his release from Dallas County Jail because of the TDC hold on him. He petitioned for a writ of *habeas corpus* and was finally released on November 26, 1987.

Pete also alleges that Joshua W. E. Taylor (Taylor), an attorney, had been appointed as Samantha's guardian *ad litem* by the Texas Juvenile Court on May 15, 1985, three days after Pete was originally arrested. On October 31, 1985, the Juvenile Court issued a permanent injunction that no contact be permitted between Pete and Samantha. An exception to the injunction permitted written correspondence between the two, but such letters were to be screened by the Juvenile Court.

Pete alleged that Taylor knew that Samantha had fabricated her charge against Pete, but withheld that information from the court.[2] Pete also claimed that Taylor aided Perry in persuading Samantha to testify against Pete, and that Taylor further restricted communication between Pete and Samantha, which prevented Pete from discovering what or who had caused her to falsely accuse him.

On October 16, 1989, almost two years after his final release from prison, Pete filed this 42 U.S.C. § 1983 suit in United States district court seeking damages against Metcalfe, Fourt, Gorham, Perry, Cox, Taylor, and the TDC for their parts in his arrest, prosecution, and imprisonment. The case was referred to a

---

[2]    Samantha claimed in her affidavit that she had admitted to Taylor, on at least one occasion, that she had fabricated her accusation and testimony against Pete.

4

magistrate who, following diverse motions by various of the defendants and responses thereto by Pete, recommended dismissal of Pete's claims because (1) Pete's claims were barred by the statute of limitations, (2) the TDC was immune from liability by virtue of the Eleventh Amendment, and (3) Metcalfe, Fourt, Gorham, or Taylor, as private attorneys, were not state actors and therefore could not be sued under section 1983. The district court adopted the magistrate's findings and dismissed the suit. Pete filed a timely notice of appeal.

## Discussion

We first note that the Eleventh Amendment precludes Pete's suit against the TDC for damages. *Alabama v. Pugh*, 98 S.Ct. 3057, 3058 (1978); *Clay v. Texas Women's University*, 728 F.2d 714, 715 (5th Cir. 1984). Pete has not challenged this ruling on appeal.

Second, Metcalfe, Fourt, and Gorham, the attorneys who represented Pete in this matter, are not state officers or employees. The Supreme Court, in *Dennis v. Sparks*, 101 S.Ct. 183 (1980), held that the proper test for determining whether a private party is amenable to suit under section 1983 is whether the party was "a willful participant in joint action with the State or its agents." *Id.* at 186.

In his pleadings, Pete charges Metcalfe, Fourt, and Gorham with nothing more than professional malpractice. In his complaint, Pete asserts liability of these three attorneys on the basis of "inaction, negligence and malpractice [that] deprive [Pete] of liberty and property without due process of law . . . ." Even

5

affording Pete's *pro se* pleadings the liberal construction to which they are entitled, *see Haines v. Kerner*, 92 S.Ct. 594 (1972), we cannot find any allegation of complicity between these attorneys and any of the other state actors allegedly involved in Pete's arrest and prosecution.

Applying the *Sparks* standard, we find that Pete did not plead sufficient facts that, if true, would render Metcalfe, Fourt, and Gorham amenable to suit under 42 U.S.C. § 1983. Pete's action with regard to these defendants was properly dismissed.[3]

As to the other defendants, Perry, Cox, and Taylor, this action must be dismissed in part on statute of limitations grounds and in part on the merits.

In determining the limitations period for a section 1983 claim, we apply the applicable period provided by state law, in this case the two-year Texas personal injury limitations period. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). In determining when Pete's cause of action accrued, however, we apply federal law. *Id*. The federal standard provides that a cause of action under section 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id*.

Pete knew he had been subject to wrongful arrest and confinement at the hands of Perry and Cox on May 12, 1985. Pete

---

[3]    Because we uphold the dismissal as to Taylor on other grounds, we do not reach the question whether Pete's claims that Taylor, as Samantha's guardian, aided Perry in convincing her to testify against Pete while knowing that her accusations were false state sufficient complicity between Taylor and a state actor to render Taylor's actions "under color of state law" within the meaning of *Sparks*.

admitted below that he became aware of his claims against Taylor during his first trial, which took place later in 1985.[4] In any event, these facts were known to Pete more than two years before October 16, 1989, the date Pete finally filed his section 1983 action. Unless the limitations period was tolled for some reason, his claims against Perry, Cox, and Taylor would therefore be barred.

Pete claims that the limitations period should be tolled until the date of his final release from prison on November 26, 1987, because of his imprisonment. The Supreme Court has held that for section 1983 actions, the use of the state law limitations period includes application of state tolling provisions for imprisonment. *Hardin v. Straub*, 109 S.Ct. 1998, 2003 (1989).

Prior to September 1, 1987, Texas law recognized imprisonment as a disability that would toll an otherwise applicable limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.001 (West 1985); *Burrell*, *supra*, 883 F.2d at 418-19. However, Texas courts and this Court uniformly held that tolling due to imprisonment under the prior tolling statute ended on the date the plaintiff was *first* released from prison. *Glover v. Johnson*, 831 F.2d 99, 100-101 (5th Cir. 1987). Also, subsequent re-imprisonment did not thereafter suspend the running of the limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.001(d) (West 1985). The statute of limitations on Pete's claims against Perry and Cox started to run, therefore,

---

[4]   The exact dates of Pete's first trial are not contained in the record before this Court.

not later than May 14, 1985, the date Pete was first released on bail after his arrest.

Analysis of Pete's claims against Taylor is a bit more complicated under this rule, however, because Pete apparently did not discover Taylor's alleged participation in his prosecution until sometime during his first trial, and because the record of this case does not clearly establish whether Pete was ever out of prison after learning of Taylor's involvement.

However, section 16.001 was amended in 1987 to omit imprisonment as a disability that would toll a limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.001 (West Supp. 1987). *Burrell, supra*, 883 F.2d at 419. Furthermore, section 65(a) of the 1987 act amending section 16.001 stated that:

> "A period of limitations that on August 31, 1987, was tolled under Section 16.001 or 16.022, Civil Practice and Remedies Code, because the person entitled to bring the action was imprisoned, begins to run on [September 1, 1987]." *See Burrell, supra*, 883 F.2d at 419 & n.3.

Therefore, whatever the previous tolling provisions of Texas law, the limitations period for Pete's claims against Taylor, *at the very latest*, began to run as of September 1, 1987. This means that his section 1983 action, filed on October 16, 1989, came at least forty-six days too late.[5]

---

[5] In a supplemental brief filed in this Court after the filing of his reply brief herein, Pete argues for the first time that "the time in which his State court appeal was proceeding" should be excluded in computing limitations under our decision in *Jackson v. Johnson*, 950 F.2d 263 (5th Cir. 1992). We reject this contention. In the first place, it was not raised below in Pete's several responses to the defense motions to dismiss on the basis of limitations. Moreover, it was raised too late in this Court. In the second place, Pete's direct appeal was completed

Pete alleges one additional theory, however, that merits discussion. Texas law has recognized the concept of "continuing tort" in which tortious behavior is repeated or continues for a period of time.[6] In *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153 (Tex. Civ. App. 1980, no writ), the plaintiff filed a false imprisonment suit against a mental hospital more than two years after his confinement began, but less than two years after it ended. The court held that false imprisonment was a continuing tort and thus for limitations purposes the claim accrued when the

---

well over two years before his section 1983 action was filed, so exclusion of "the time in which his State court appeal was pending," as Pete requests, would not alter the result. Finally, *Jackson* is inapplicable for other reasons also.

In *Jackson*, a prisoner filed a section 1983 action within the limitations period, but the district court found that the action challenged the validity of his conviction (for which he was still incarcerated) and was more properly styled as a petition for *habeas corpus*. A petition for *habeas corpus* in federal court requires that state *habeas* remedies be exhausted, however, and so the federal section 1983 action was dismissed. It was on these facts that this Court found later that under Texas law the federal exhaustion requirement tolled running of the limitations period until the state remedies had been exhausted. *Id*. at 265-67.

*Jackson* is inapplicable to this case, however, because by the time the section 1983 action here was filed, Pete had long been out of prison and this action could not therefore be construed as a *habeas corpus* petition. Furthermore, the Texas tolling rule relied upon by the *Jackson* Court is inapplicable because there were no pending legal proceedings that prevented Pete from filing his section 1983 action long before limitations expired. *See id*. at 265.

[6] We note that this theory could only apply to Pete's post-conviction incarceration. His original arrest and detention were terminated by his release on bail pending his first trial. Any action for false arrest or false imprisonment would therefore have accrued, at the very latest, when he was released on bail the second time on July 29, 1985. The limitations period had long since run on these injuries by October 1989.

9

detention ended.  The *Adler* court rejected the notion espoused by other courts that a new and separate tort was committed on each day that the detention continued.  The court reasoned that such a conceptual formulation would lead to a multiplicity of suits and would complicate damage calculations.  Instead, the court concluded that the unlawful detention constituted a single, continuing tort and that the most logical point to fix accrual was when the tort was completed, *i.e.*, when detention ended.  *Id*. at 155-56.  *See also Smith v. Avance*, 553 F.Supp. 434 (E.D. Tex.) (applying *Adler*'s holding to a section 1983 claim for personal injury and wrongful arrest and confinement), *aff'd*, 683 F.2d 415 (5th Cir.), *cert. denied*, 103 S.Ct. 351 (1982).

The decision of when a false imprisonment claim accrues for the purposes of bringing a section 1983 action in federal court is a difficult one.  Because Pete's post-conviction false imprisonment claims may be dismissed on their merits, this case does not present the proper circumstance to answer that question.

The elements of false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law.  *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).  It is also generally the rule that no action for false imprisonment will lie where the detention was executed by virtue of legally sufficient process duly issued by a court of competent jurisdiction.  *Sanchez v. Garza*, 581 S.W.2d 258, 259 (Tex. Civ. App. 1979, n.w.h.).  This is true where an arrest is pursuant to a validly issued arrest warrant, see *id*., and must also be true

10

where, as here, Pete's two-year imprisonment was the result of a judgment of conviction by a court with jurisdiction over him.[7] *See also* 32 *Am. Jur. 2d, False Imprisonment,* § 80; *Restatement (Second) of Torts*, § 37, comment b; *Prosser and Keeton on Torts* (5th ed. 1984), § 11 at 54.

Nor does Pete's claim of malicious prosecution change the result, because that claim, too, fails on its merits. The elements of a malicious prosecution claim are: (1) a criminal action was commenced against the plaintiff; (2) the prosecution was caused by the defendant or with his aid; (3) the action terminated in plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff. *Brown v. United States*, 653 F.2d 196, 198-99 (5th Cir. 1981), *cert. denied*, 102 S.Ct. 1970 (1982). Pete fails to state a claim for malicious prosecution because his prosecution ended with a plea of *nolo contendere* and resulting conviction and thus the action did not terminate in his favor. This bars any action for malicious prosecution. *See Brown v. Edwards*, 721 F.2d 1442, 1448-49 n.8 (5th Cir. 1984) and authorities there cited; *Brummett v. Camble*, 946

---

[7] Of course, this analysis would not dispose of Pete's claim, were he able to assert one, for the extension of his imprisonment due to the TDC "hold" that was placed on him. However, this claim would be against the TDC itself rather than Perry, Cox, or Taylor, who are not alleged to have had anything to do with it, and as we have already discussed, *supra*, the TDC is immune from Pete's claims against it.

F.2d 1178, 1183-84 (5th Cir. 1991).[8]  Obviously, a conviction is not a termination favorable to the accused.  Even a dismissal pursuant to a compromise is not.[9]

## Conclusion

Pete's claims as to all the named defendants are either barred or fail to state a claim on which relief can be granted. Therefore, the judgment of the district court dismissing Pete's section 1983 action is

AFFIRMED.

---

[8]     Under *Brummett*, the statute of limitations would not commence to run on the malicious prosecution claim until Pete's 1987 conviction on his plea of *nolo contendere*.  The exact date of that conviction is not in this record.

[9]     "[D]ismissal of a criminal prosecution brought about by the procurement or compromise of the person therein accused is not such an end of the prosecution as will warrant an action for damages for malicious prosecution." *Ellis v. Sinton Savings Ass'n*, 455 S.W.2d 834, 842 (Tex. Civ. App. 1970, writ ref'd n.r.e.).  *See also Restatement (Second) of Torts* § 660(a); 32 *Am. Jur. 2d, Malicious Prosecution*, § 43; *Prosser and Keeton*, § 119 at 875.
    This Court has, in the past, reached the conclusion that so long as a criminal conviction is valid, the criminal defendant is collaterally estopped from bringing a section 1983 action based on events surrounding the prosecution. *See Martin v. Delcambre,* 578 F.2d 1164, 1165 (5th Cir. 1978). *See also Walker v. Schaeffer*, 854 F.2d 138, 140, 142-43 (6th Cir. 1988).  However, we do not rely on this theory because the Supreme Court's decision in *Haring v. Prosise*, 103 S.Ct. 2368 (1983), handed down after *Martin*, makes a collateral estoppel analysis turn on the particular issues presented and whether they were litigated and necessary to the decision in the state court proceedings.