<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________
                                                       

No. 96-1425

                         LESTER OLSEN,

                     Plaintiff, Appellant,

                               v.

               WILLIAM CORREIRO, ALAN SILVIA, and
                   THE CITY OF FALL RIVER,

                     Defendants, Appellees.
                                   
                      ____________________

                    
          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

           [Hon. Patti B. Saris, U.S. District Judge]

                      ____________________
                         
                             Before

                     Boudin, Circuit Judge,
                Bownes, Senior Circuit Judge,
                  and Lynch, Circuit Judge.
                      ____________________

         John H. Cunha, Jr., with whom Helen Holcomb, Charles
Allan Hope, Cunha & Holcomb, P.C., and Professor Kent B. Greenfield
were on brief, for appellant.
                   Arthur D. Frank, Jr. for appellee William Correiro.
         Andrew B. Peppard, with whom Borders, Littman & Peppard
was on brief, for appellee Alan Silvia.
         Thomas F. McGuire, Jr., Corporation Counsel, for appellee
City of Fall River.
     

                      ____________________
                         
                       August 30, 1999
                     ____________________
         LYNCH, Circuit Judge.  On May 13, 1986, Lester Olsen was
convicted of the first-degree murder of Harold Fernandes and was
sentenced to life in prison without the possibility of parole.  
Approximately five years later, a Massachusetts court overturned
his conviction, a ruling that was based on the investigating police
officers' failure to disclose an audiotaped interview with the
prosecution's chief witness, and ordered a new trial.  Olsen was
released from prison on bail pending the new trial.   
         On February 21, 1992, rather than go through another
murder trial, Olsen pled nolo contendere to a charge of
manslaughter and was convicted of that crime.  The prosecution  
agreed to recommend a sentence of time served.  Although the state
judge questioned whether this sentence was sufficiently severe,
Olsen was sentenced to the time he had already served for the
original conviction, the balance of the ten- to fifteen-year
manslaughter sentence was suspended, and he was placed on probation
for five years.
         Olsen then sued the City of Fall River and two police
officers, William Correiro and Alan Silvia, under 42 U.S.C.  1983
for damages arising from the murder charge and conviction.  His
complaint was primarily focused on obtaining damages for his
imprisonment.  The jury awarded him $1.5 million in compensatory
damages.  The district court overturned this award under Heck v.
Humphrey, 512 U.S. 477 (1994), and ordered a new trial on damages.  
At that trial, evidence of injury arising from Olsen's
incarceration was excluded, but evidence of other damages
associated with his murder trial and conviction was permitted.  The
second jury awarded $6000 in damages.  In this appeal, Olsen seeks
the reinstatement of the first jury's damage award.
         In affirming the district court's decision and the
resulting judgment, we do not reach the grounds on which the
district court relied, but rather affirm on other grounds.  The
first question presented in this case is whether evidence of the
manslaughter conviction and sentence that resulted from Olsen's
nolo plea should have been admitted into evidence.  We conclude
that the evidence of the conviction and sentence should have been
admitted; the admission of this evidence is not prohibited by the
applicable evidentiary rules and policy considerations fail to
justify a reading of those rules to exclude this evidence.  The
second question presented is what effect the manslaughter
conviction and sentence for time served have on Olsen's efforts
under  1983 to recover damages for his imprisonment.  We conclude
that incarceration-based damages are barred.
I
         Olsen brought his federal civil rights action in April
1992, alleging that, as a result of the defendants' actions
relating to the murder charge, he "endured loss of liberty, mental
suffering, humiliation, and emotional trauma from the improper
incarceration and conviction," and "was deprived of any means of
earning a living" during the time he was incarcerated.  He
requested an award of $1,911,000 "representing 1,911 days illegally
in custody."  The defendants' answers raised Olsen's manslaughter
conviction resulting from the nolo plea as an affirmative defense.  
The City of Fall River, for instance, stated that "[a]s the
[p]laintiff has been convicted of a lesser included offense of the
original murder indictment and has had credited the period of
incarceration of approximately five (5) years, [p]laintiff is not
entitled to damages based upon the period of incarceration
identified with the conviction for manslaughter."
         Before trial, Olsen filed a motion in limine to "exclude
the admission of evidence of plaintiff's nolo contendere plea in
the state criminal case," and the defendants filed motions, opposed
by Olsen, seeking admission of the conviction and sentence imposed
as a result of the nolo plea, arguing that "[p]laintiff's
incarcerations to the prison term for which he seeks damages in
this action are admissible as substantive evidence on the issue of
damages."  In support of their motions, the defendants proffered
the transcript of the hearing at which Olsen pled nolo and the
court imposed sentence.  The federal district judge decided that
any evidence pertaining to the nolo plea and its consequences would
not be placed before the jury, and also excluded any references to
the state court order allowing Olsen a new criminal trial.  The
jury thus did not know that Olsen had been granted a new state
criminal trial after his initial conviction, had pleaded nolo
rather than go to trial again, had been accordingly convicted of
manslaughter, and had been sentenced to time served plus probation.  
         On March 17, 1994, the jury held all three defendants
liable, finding that Correiro and Silvia each failed to produce
exculpatory evidence, that they conspired together to suppress the
evidence and to give false or substantially misleading testimony
before the grand jury, and that the City's customs and practices
amounted to deliberate indifference to Olsen's constitutional
rights, all resulting in the murder conviction.  This first jury
awarded Olsen $1.5 million in compensatory damages but awarded no
punitive damages.
         After trial, defendants filed motions for judgments as a
matter of law, motions for a new trial, and motions for remittitur.  
Defendants Correiro and Silvia also renewed motions in limine in
which they argued that the conviction and sentence imposed pursuant
to the nolo plea barred plaintiff's action for compensatory damages
as a matter of law (and further proffered the docket sheet of the
Massachusetts court, which records the manslaughter sentence).
         The district judge granted defendants' motions for
judgment as a matter of law on September 26, 1994 and substituted
$300 in "nominal" damages for the jury's award.  The court stated
that "[t]he central issue . . . is whether a voluntary plea of nolo
contendere to a state manslaughter charge, pursuant to which Olsen
is lawfully sentenced to 'time served,' precludes him from
recovering damages, under  1983, for an incarceration which had
originally been imposed pursuant to an earlier unlawful conviction
and sentence."  The court's resolution of this issue was based on
its analysis of Heck, which was decided while the post-trial
motions were under advisement.  The court rejected the argument
that the damages suffered as a result of the incarceration were
solely due to the invalidated conviction, explaining that "Olsen
cannot escape the fact that his sentence of incarceration was re-
imposed validly, albeit retroactively, and  1983 does not allow a
claim for damages based on a lawful confinement."
         The court justified its consideration of the manslaughter
conviction and sentence by explaining that a nolo plea, like a
guilty plea, results in a valid conviction under Massachusetts law.  
According to the court, Federal Rule of Evidence 410 does not
change this result: "While [Rule] 410(2) prevents the introduction
in evidence of a nolo plea in a subsequent civil proceeding, it has
no effect on the validity of the outstanding criminal judgment."  
Additionally, the court stated that Olsen was not forced to enter
the nolo plea bargain and that he knew about the formerly withheld
audiotape evidence at the time he made the plea.
         While concluding that Heck barred Olsen from making a
claim for any damages that resulted from his incarceration and that
these were essentially the only damages Olsen had demonstrated at
trial, the court noted that Heck did not bar damages "which do not
derive from the lawful sentence imposed pursuant to the subsequent
manslaughter conviction," such as punitive damages based on the
invalidated murder conviction, legal fees associated with the first
trial, and emotional injury arising from the defendants'
misconduct.  The court further found that Olsen's nolo plea did not
bar these limited categories of damages as a matter of res judicata
or collateral estoppel, since Massachusetts does not consider
guilty pleas to have preclusive effect and a plea of nolo is
unlikely to have greater preclusive effect than a guilty plea.
         On October 11, 1994, Olsen filed motions for
reconsideration and, in the alternative, for a new trial as to
damages.  He argued that Heck was inapplicable to the facts of his
case and that the manslaughter sentence and conviction were
inadmissible under Massachusetts law because they were rendered
pursuant to a nolo plea.  He also argued that there was evidence at
trial of compensatory damages stemming from "the initial wrongful
indictment and conviction," including emotional injury that was
"[s]eparate and distinct from Olsen's damages resulting from the
day-to-day incarceration."  According to Olsen, given the court's
analysis of Heck, a new trial was necessary to determine the amount
of damages flowing from the invalidated murder conviction and to
give him another chance at an award of punitive damages.  Olsen
further moved to amend his complaint "to conform to the evidence
adduced at the trial" and "to include as an element of damages
attorneys fees in the amount of $5,000.00 paid to Attorney Joseph
Callahan to represent the plaintiff at the constitutionally tainted
trial."
         On February 3, 1995, the court denied the motion for
reconsideration but granted the motion to amend the complaint and
the motion for a new trial on damages.  The court stated that the
new jury could consider punitive damages and that "plaintiff may
present evidence to establish the 1986 attorney's fee, in addition
to evidence of emotional damages, and any other evidence concerning
damages caused by the first trial and conviction," but that any
loss of earnings was "not compensable here to the extent that [it]
. . . was caused by the lawful incarceration."
         In February 1996, the new jury in the damages trial
awarded Olsen $5000 in compensatory damages and $1000 in punitive
damages ($500 from each individual defendant).  Olsen now appeals,
seeking to reinstate his original and substantially larger
compensatory damages award.
                              II
A.  Admissibility of Conviction and Sentence Pursuant to Nolo Plea

         Olsen argues that the district judge's initial ruling
that the manslaughter plea, sentence, and conviction were
inadmissible should have precluded the judge from considering that
evidence in ruling on the defendants' post-trial motions.  Although
the parties disagree as to the terms and scope of this initial
ruling, it is not necessary for us to determine the exact grounds
for the district court's exclusion of this evidence.  The
admissibility issue was squarely presented to us and to the
district court.  "[A]n appellate court is not restricted by the
district court's rulings of law, but is 'free, on appeal, to affirm
[the] judgment on any independently sufficient ground.'"  Hope
Furnace Assocs. v. FDIC, 71 F.3d 39, 42 (1st Cir. 1995) (quoting
Polyplastics, Inc. v. Transconex, Inc., 827 F.2d 859, 860-61 (1st
Cir. 1987)).  Here the evidentiary questions are primarily
questions of law about the interpretation of the Federal Rules of
Evidence, which we review de novo in any event.  See United States
v. Sposito, 106 F.3d 1042, 1046 (1st Cir. 1997) ("The proper
interpretation of the Federal Rules of Evidence is a question of
law and is reviewed de novo, but the application of [a rule] . . .
is reviewed under an abuse-of-discretion standard." (citations
omitted)); see also Cusumano v. Microsoft Corp., 162 F.3d 708, 713
(1st Cir. 1998) ("[A]mple authority supports the proposition that,
whatever the procedural context, pure questions of law warrant de
novo review.").   
         Olsen has three bases for his argument that nothing
pertaining to the nolo plea and its consequences was admissible or
could be considered by the district court.  It is forbidden, he
says, by Federal Rules of Evidence 410 and 803(22) and by
Massachusetts law.  In essence, Olsen's claim amounts to a
contention that a valid judgment rendered by a court is
inadmissible in a later court proceeding.  Whether such a
proposition can be true, it is not true here.  The evidentiary
rules that exclude evidence of nolo pleas do not directly apply to
the convictions and sentences that result from such pleas.  And the
policy against using evidence of a nolo plea to prove any element
of the underlying crime is not applicable here, where evidence of
the sentence and conviction is admissible to demonstrate that Olsen
was imprisoned pursuant to a valid sentence.  
    1.  Rule 410
         Olsen claims that Rule 410 bars the admission of any
evidence of his nolo plea, conviction, or sentence.  Rule 410
states:
         Except as otherwise provided in this rule, evidence of the
    following is not, in any civil or criminal proceeding,
    admissible against the defendant who made the plea or was a
    participant in the plea discussions: . . . a plea of nolo
    contendere; . . . any statement made in the course of any
    proceedings under Rule 11 of the Federal Rules of Criminal
    Procedure or any comparable state procedure regarding . . . [a
    nolo plea]; or . . . any statement made in the course of plea
    discussions with an attorney for the prosecuting authority
    which do not result in a plea of guilty or which result in a
    plea of guilty later withdrawn.

Fed. R. Evid. 410.  
         The text of the rule does not support Olsen's argument.  
Only the nolo plea itself is barred by the relevant language of the
rule.  See Myers v. Secretary of Health and Human Servs., 893 F.2d
840, 843 (6th Cir. 1990) (noting that Rule 410 and Rule 11(e)(6)
"prohibit use of 'a plea of nolo contendere,' not a conviction
pursuant to a nolo plea").
         The reasons behind a rule making the nolo plea
inadmissible are readily apparent.  First, although nolo pleas have
been characterized in a number of different ways, see 21 Am. Jur.
2d Criminal Law  727 (1998), in most jurisdictions, including
Massachusetts, a nolo plea is not a factual admission that the
pleader committed a crime.  Rather, it is a statement of
unwillingness to contest the government's charges and an acceptance
of the punishment that would be meted out to a guilty person.  See,
e.g., North Carolina v. Alford, 400 U.S. 25, 36 & n.8 (1970)
("Throughout its history . . . the plea of nolo contendere has been
viewed not as an express admission of guilt but as a consent by the
defendant that he may be punished as if he were guilty and a prayer
for leniency."); Thomas v. Roach, 165 F.3d 137, 144 (2d Cir.
1999); Fisher v. Wainwright, 584 F.2d 691, 693 n.3 (5th Cir. 1978);
Commonwealth v. Ingersoll, 14 N.E. 449, 450 (Mass. 1888).  This is
the main reason that a nolo plea is treated differently than a
guilty plea, which is an express admission of guilt by the pleader
and is therefore admissible in subsequent proceedings.  See Fed.
R. Evid. 410 advisory committee's notes, 1972 proposed rules ("The
present rule gives effect to the principal traditional
characteristic of the nolo plea, i.e. avoiding the admission of
guilt which is inherent in pleas of guilty."); Fed. R. Crim. P.
11(e)(6) advisory committee's notes, 1974 amendment ("A plea of
nolo contendere is, for purposes of punishment, the same as the
plea of guilty. . . .  Unlike a plea of guilty, however, [a nolo
plea] cannot be used against a defendant as an admission in a
subsequent criminal or civil case. . . . A defendant who desires to
plead nolo contendere will commonly want to avoid pleading guilty
because the plea of guilty can be introduced as an admission in
subsequent civil litigation."); see also Blohm v. Commissioner of
Internal Revenue, 994 F.2d 1542, 1554 (11th Cir. 1993) ("A guilty
plea is more than a confession which admits that the accused did
various acts. . . . A guilty plea is distinct from a plea of nolo
contendere.  A guilty plea is an admission of all of the elements
of a formal criminal charge."  (citations and internal quotation
marks omitted)); United States v. Williams, 642 F.2d 136, 139 (5th
Cir. Unit B Apr. 8, 1981).
         A second reason behind Rule 410's exclusion of nolo pleas
is a desire to encourage compromise resolution of criminal cases.  
See Williams, 642 F.2d at 139; United States v. Grant, 622 F.2d
308, 312 (8th Cir. 1980); Leonard, The New Wigmore: A Treatise on
Evidence, Selected Rules of Limited Admissibility,  5.4.4, at
5:49, 5:52 & n.48 (1998); cf. Fed. R. Evid. 410 advisory
committee's notes, 1972 proposed rules ("Exclusion of offers to
plead guilty or nolo has as its purpose the promotion of
disposition of criminal cases by compromise."); Fed. R. Crim. P.
11(e)(6) advisory committee's notes, 1979 amendment (noting the
importance of plea bargaining).  The reach of this policy rationale
has limits, of course; the plain language of the rule reflects
Congress's balancing of the promotion of compromise against the
admission of relevant evidence.  Cf., e.g., United States v.
Cusack, 827 F.2d 696, 697-98 (11th Cir. 1987) (stating that the
fruits of plea discussions are not barred by Rule 11(e)(6), since
such a rule would go beyond the balance of values struck by
Congress).  
         These reasons for excluding the nolo plea itself could
well, on other facts, be applicable to the conviction and sentence
that result from the nolo plea.  If such convictions and sentences
were offered for the purpose of demonstrating that the pleader is
guilty of the crime pled to, then the nolo plea would in effect be
used as an admission and the purposes of Rule 410 would be
undermined.  See Leonard, supra,  5.8.3, at 5:103-04 (noting that
when offered to prove the underlying facts the judgment should be
excluded to "effectuat[e] the policy behind the nolo plea and the
plea exclusionary rule itself"); Shipley, Conviction or Acquittal
as Evidence of the Facts on Which It Was Based in Civil Action, 18
A.L.R.2d 1287  5 (1951 & 1999 Supp.) ("Since the plea of nolo
contendere, while admitting guilt for the purposes of the action in
which it is entered, restricts its effect to that action, it has
been held that evidence of a conviction upon such a plea is not
admissible . . . as evidence of the facts admitted by the plea."  
(footnote omitted)); 2 Weinstein, Weinstein's Federal Evidence,  
410.06[3], at 410-17, -18 (2d ed. 1998) (stating that a
conviction based on a nolo plea "is ordinarily excluded when
offered as substantive evidence of the facts underlying the
crime").  But that is not our case: the evidence here is not being
offered to prove guilt.
         There is a line of cases permitting the use of
convictions that follow from nolo pleas.  These cases, which
distinguish between the plea and the conviction, primarily involve
statutes that attach some consequence to the fact of a "conviction"
(such as multiple-offender statutes).  See, e.g., Myers, 893 F.2d
at 843-44 (admitting evidence of a nolo conviction as proof of the
facts underlying the crime on the grounds that Rule 410 and Rule
11(e)(6) do not apply in an administrative proceeding and that
proof of a nolo conviction has been admitted in a variety of cases,
especially those where "a statute or judicial rule attaches legal
consequences to the fact of a conviction"); Pearce v. United States
Dep't of Justice, Drug Enforcement Admin., 836 F.2d 1028, 1029 (6th
Cir. 1988) (interpreting "conviction" as used in 21 U.S.C.  824 to
include a conviction based on a nolo contendere plea, since
"[n]otwithstanding Rule 410, a conviction pursuant to a nolo
contendere plea is a conviction within the meaning of the statute
and gives rise to a variety of collateral consequences in
subsequent proceedings"); Crofoot v. United States Gov't Printing
Office, 761 F.2d 661, 665 (Fed. Cir. 1985) (upholding the use of a
conviction pursuant to an Alford plea in a Merit Systems Protection
Board review of an employee's removal by analogizing to cases
permitting the use of convictions pursuant to nolo pleas); see also
Fed. R. Crim. P. 11(e)(6) advisory committee's notes, 1974
amendment ("A judgment upon the plea is a conviction and may be
used to apply multiple offender statutes.").
         There is some criticism of these cases to the effect that
they do, in the end, turn on the significance of the facts that
normally underlie a conviction of the crime at issue.  Whether or
not this criticism is well taken, it is not applicable when the
conviction and sentence are used to show nothing more than the fact
of a valid sentence and conviction.  Introduction of the
manslaughter sentence and conviction in this case was not sought to
prove that Olsen actually committed manslaughter, or to suggest
that he was actually guilty of a criminal act.  Instead, the
sentence was primarily offered to counter Olsen's claim for
incarceration-based damages by showing that he was incarcerated for
something other than the murder conviction.  In this context, the
reason for the punishment, the existence of underlying culpability,
is irrelevant.  It is the existence of the punishment (which, given
the "time served" sentence, cannot be proved through prison records
or by any other means) that matters.
         Accordingly, there is no reason here to expand Rule 410
beyond the scope of its plain language, which in relevant part
encompasses only nolo pleas.  See United States v. Rutkowski, 814
F.2d 594, 599 (11th Cir. 1987) (declining to expand Rule 11(e)(6)
to cover evidence discovered as the fruit of a plea negotiation and
stating that it is up to Congress to change the scope of the rule);
United States v. Davis, 617 F.2d 677, 683, 686 (D.C. Cir. 1979)
(noting that the court must consider Rule 11(e)(6)'s "underlying
policies as well as its words, for intention prevails over the
letter, and the letter must if possible be read so as to conform to
the spirit," and concluding that, "[b]ecause exclusion here would
not serve the purposes for which [R]ule 11(e)(6) was adopted, we
hold that the rule does not apply in the situation now before us").  
Rule 410 therefore does not bar the admission of Olsen's
manslaughter sentence and conviction to prove that he was
incarcerated for murder and for another legal reason.  
    2.  Rule 803(22)
         Olsen also contends that Rule 803(22), one of the
exceptions to the hearsay rule, acts as an affirmative bar to the
admission of a conviction imposed pursuant to a nolo plea.  Rule
803(22) provides:
         The following are not excluded by the hearsay rule, even
    though the declarant is available as a witness: . . . Evidence
    of a final judgment, entered after a trial or upon a plea of
    guilty (but not upon a plea of nolo contendere), adjudging a
    person guilty of a crime punishable by death or imprisonment
    in excess of one year, to prove any fact essential to sustain
    the judgment, but not including, when offered by the
    Government in a criminal prosecution for purposes other than
    impeachment, judgments against persons other than the accused.  
    The pendency of an appeal may be shown but does not affect
    admissibility.

Fed. R. Evid. 803(22).  The advisory committee's note to this
subsection explains that it is intended to harmonize with Rule 410:  
"Judgments of conviction based upon pleas of nolo contendere are
not included.  This position is consistent with the treatment of
nolo pleas in Rule 410 and the authorities cited in the Advisory
Committee's Note in support thereof."  Id. advisory committee's
note to 803(22), 1972 proposed rules.
         As an initial matter, it is not obvious that Rule 803(22)
can be interpreted to bar any evidence; the rule merely says that
certain evidence of judgments is not barred by the hearsay rule and
that this exception does not apply to judgments entered upon a nolo
plea.  Evidence of a final judgment that does not fall within this
exception to the hearsay rule could still be admissible, either
because it is not being offered for the truth of the matter
asserted or because it falls within some other hearsay exception.  
See Hinshaw v. Keith, 645 F. Supp. 180, 182 (D. Me. 1986) ("Rule
803(22) is not a rule of exclusion, but rather an exception to the
broad exclusionary rule known as the hearsay rule."); cf. Hancock
v. Dodson, 958 F.2d 1367, 1372 (6th Cir. 1992); United States v.
Martinez, 775 F.2d 31, 37 (2d Cir. 1985).
         Even assuming that the rule does act as an affirmative
bar with respect to some final judgments entered "upon a plea of
nolo contendere," that bar would not be applicable in Olsen's
case.  Only evidence of such a judgment offered, as required by the
rule, "to prove any fact essential to sustain the judgment" would
be barred by Rule 803(22).  The condition is not met here.  The
defendants did not offer Olsen's manslaughter sentence on the
damages issue to prove that he committed manslaughter; they offered
it to show that he was legally punished in a way that is relevant
to his claim for incarceration-related damages.  Rule 803(22) does
not bar such a use.  See United States v. Breitkreutz, 977 F.2d
214, 221 (6th Cir. 1992) ("Rule 803(22) is not applicable where the
judgment of previous conviction of a person other than the accused
is not offered to prove a fact essential to sustain the judgment."  
(citing United States v. Wilson, 690 F.2d 1267, 1275 n.2 (9th Cir.
1982)).  The rule "reaches convictions as proof of underlying facts
and does not apply to convictions that are important as facts in
themselves and as indicators of the official disposition of the
convicted person."  4 Mueller & Kirkpatrick, Federal Evidence,
472, at 660 (2d ed. 1994).
         Olsen argues in passing in his opening brief that, even
if this court does not construe Rule 803(22) to affirmatively bar
the introduction of the manslaughter conviction and sentence, "no
other exception to the hearsay rule which would allow admission of
this evidence was offered by the defendants below."  We will assume
dubitante that Olsen made a generalized hearsay objection in the
district court, see United States v. Mulinelli-Navas, 111 F.3d 983,
989 (1st Cir. 1997); United States v. Zannino, 895 F.2d 1, 17 (1st
Cir. 1990); United States v. Wyatt, 762 F.2d 908, 909-10, 912 (11th
Cir. 1985), and further assume that the materials proffered by the
defendants to prove the "time served" sentence can be characterized
as hearsay.  The evidence is still admissible under the public
records exception, Fed. R. Evid. 803(8)(A).  See United States v.
Romero, 32 F.3d 641, 649-50 (1st Cir. 1994) (accepting Secretary of
State's certification that a vessel was stateless under Rule
803(8)(A) since it "was a statement by a public agency setting
forth a routine activity of that agency"); see also United States
v. Lechuga, 975 F.2d 397, 399 (7th Cir. 1992); United States v.
Vidaure, 861 F.2d 1337, 1341 (5th Cir. 1988).  When offered to show
the fact of conviction rather than underlying guilt "a judgment
readily fits the public records exception."  4 Mueller &
Kirkpatrick, supra,  472, at 660.  But cf. Nipper v. Snipes, 7
F.3d 415, 417-18 (4th Cir. 1993) (holding that "judicial findings
of fact are not public records within the meaning of Rule
803(8)(C)" and stating that "when the drafters of the Federal Rules
of Evidence wanted to allow the admission of judgments or their
underlying facts, they did so expressly").
         Indeed, the materials have such a high degree of
reliability and trustworthiness for the purpose of proving the
judicial act of imposing sentence (rather than for the purpose of
proving that Olsen committed manslaughter) that the relevant facts
could be the subject of judicial notice.  See Fed. R. Evid. 201 ("A
judicially noticed fact must be one not subject to reasonable
dispute in that it is . . . capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably
be questioned."); In re Papatones, 143 F.3d 623, 624 n.3 (1st Cir.
1998) ("[A]ppellate courts may notice another court's record as an
adjudicative fact."); United States v. Berzon, 941 F.2d 8, 14 n.9
(1st Cir. 1991); Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir.
1990) (taking judicial notice of a murder conviction and stating
that "[i]t is well-accepted that federal courts may take judicial
notice of proceedings in other courts if those proceedings have
relevance to the matters at hand").
    3.  Massachusetts Law
         Olsen argues that Massachusetts law requires the
exclusion of his nolo plea, sentence, and conviction.  We are
doubtful Massachusetts rules of evidence have any application to
this federal question case, but think that Massachusetts's view of
a nolo conviction and sentence supports the result here.  Olsen has
not pointed us to anything in that law that is in tension with our
analysis of the admissibility question under the Federal Rules of
Evidence.   
         The Massachusetts rule is similar to Rule 410 and its
twin, Federal Rule of Criminal Procedure 11(e)(6):
         Except as otherwise provided in this subdivision, evidence of
    a plea of guilty, later withdrawn, or a plea of nolo
    contendere, or of an offer to plead guilty or nolo contendere
    to the crime charged or any other crime, or statements made in
    connection with, and relevant to, any of the foregoing pleas
    or offers, is not admissible in any civil or criminal
    proceedings against the person who made the plea or offer.

Mass. R. Crim. P. 12(f); see also id. (providing that such evidence
"is admissible in a criminal proceeding for perjury if the
statement was made by the defendant under oath, on the record, and
in the presence of counsel").  Indeed, the reporter's notes to the
Massachusetts rule expressly state that subsection (f) was "[d]rawn
from Fed. R. Crim. P. 11(e)(6)."  Id. reporter's note.  The
reporter's notes also indicate that Rule 12, which does not mention
nolo convictions and sentences, was concerned with the effect of
the plea itself as an admission by the pleader in a later case: "A
nolo plea has the same effect as a guilty plea in the case before
the court, although it cannot be used against the defendant as an
admission in any subsequent civil proceeding" (citation omitted).  
Id. reporter's note to 12(a); see id. reporter's note to
12(c)(5)(A) ("The purpose of permitting a nolo plea is to relieve
the defendant of the adverse repercussions that can result from the
introduction of evidence from the present criminal proceedings.");
see also Aetna Cas. & Sur. Co. v. Niziolek, 481 N.E.2d 1356, 1362-
63 (Mass. 1985) (explaining that a guilty plea is an admission that
may be introduced into evidence in a later proceeding against the
party who made it) (citing Morrissey v. Powell, 23 N.E.2d 411, 413
(Mass. 1939)).
         Massachusetts case law dealing with nolo pleas is sparse,
and Olsen points us almost exclusively to cases that pre-date the
July 1, 1979 effective date of the Massachusetts Rules of Criminal
Procedure.  These cases are also consistent with our reasoning.  
Although some of them purport to bar the admission of convictions
as well as pleas, they address only the use of those convictions to
prove that the pleader committed the crime.  In Commonwealth v.
Ingersoll, 14 N.E. 449 (Mass. 1888), the court stated that "[a]
plea of nolo contendere, when accepted by the court, is, in its
effect upon the case, equivalent to a plea of guilty.  It is an
implied confession of guilt only, and cannot be used against the
defendant as an admission in any civil suit for the same act."  Id.
at 450.  The court also noted, however, that "the judgment of
conviction follows upon such a plea, as well as upon a plea of
guilty," and that when the nolo plea is accepted "the court
proceeds thereupon to pass the sentence of the law."  Id.
         In White v. Creamer, 56 N.E. 832 (Mass. 1900), the
question was whether a party who pled nolo to unlawfully keeping
intoxicating liquors for sale could be barred from obtaining a
liquor license by a statute that provided that no license could
issue for a year after a "conviction."  The court stated:
         We do not doubt that a sentence imposed after a plea of nolo
    contendere amounts to a conviction in the case in which the
    plea is entered.  But we are of opinion that a record showing
    a conviction on such a plea is not admissible in another
    proceeding to show that the defendant was guilty.  A plea of
    nolo contendere is not an express confession of guilt, as is
    a plea of guilty, but is merely an implied confession.  If the
    plea is accepted, the defendant is bound by it, and may be
    sentenced; but he is not estopped to plead not guilty in an
    action for the same act.

Id. at 833 (emphasis added) (citations omitted).  This case only
contemplated an exclusion where the admission of the conviction
would have been equivalent to the admission of the plea.
         In Olszewski v. Goldberg, 111 N.E. 404 (Mass. 1916), the
court restated the now familiar proposition that a nolo plea
"admits, for the purposes of the case, all the facts which are well
stated, but it is not to be used as an admission elsewhere."  Id.
at 404 (internal quotation marks omitted); see also Commonwealth v.
Marino, 150 N.E. 841, 842 (Mass. 1926) ("For the purposes of the
case the plea of nolo contendere is an admission of guilt of the
offense charged, and is equivalent to a plea of guilty.").  The
court also stated that the conviction pursuant to such a plea could
not be used for impeachment in later proceedings: "In this
commonwealth it is now settled that a conviction following a plea
of nolo contendere, cannot be used in another proceeding to affect
the credibility of a witness.  It was not admissible in the case at
bar."  Id. (citing White and Ingersoll).  Olszewski is functionally
equivalent to White, since the use of a conviction to "affect
credibility" is in most circumstances based on the proposition that
the pleader is actually guilty of the crime of which he was
convicted.  See 2 Mueller & Kirkpatrick, supra,  143, at 136
(explaining that it is the misbehavior supposedly revealed by the
conviction that is used to impeach).  Again, this is not the
situation here.
         The only relevant case cited to us by Olsen that was
decided after the adoption of Rule 12 is LePage v. Bumila, 552
N.E.2d 80 (Mass. 1990), which held that the payment of a parking
ticket could not be used as an admission of fault at a later civil
trial.  See id. at 82-83.  The court noted the unreliability of
such a payment as an admission (since it could be motivated by
expedience rather than fault) as well as the systemic benefits of
encouraging such "compromise" payments, and then explained that
"[p]aying a parking ticket is akin to a plea of nolo contendere
which admits the facts alleged, but only for purposes of the case
in which the plea is made.  Such a plea cannot be used in a later
civil or criminal trial."  Id. at 83 n.3 (citing Mass. R. Crim. P.
12(f) and White).  Since LePage was clearly concerned with
admissions and referred to the inadmissibility of a nolo plea only
in this context, it, like the other cases Olsen cites, does not aid
Olsen in his argument for exclusion of his manslaughter sentence
and conviction.  
    4.  Other Considerations
         It is true, as Olsen contends, that probative evidence is
often excluded because of its unreliability or because of larger
policy goals.  It is also true that "[c]onflicts between rule and
equity are common.  If every ruling is ad hoc, it is hard to
implement policy and predict outcomes."  United States v. Omar, 104
F.3d 519, 524 (1st Cir. 1997).  However, the examples that Olsen
gives of limitations on evidence as to damages are not useful
analogies.  For instance, the collateral source rule, which is
based on different policy rationales than the rules associated with
the nolo plea, is not a restriction on evidence that is probative
of the very existence of an injury; and hearsay evidence about a
plaintiff's pain and suffering is unreliable, whereas the evidence
of Olsen's sentence is highly reliable.  
         Moreover, we see no conflict between rule and equity in
this case.  "The [nolo] plea and the conviction that follow[s] upon
it can hardly be viewed as inconsequential; the issue is simply
what consequences to give them and where."  United States v.
Guadarrama, 742 F.2d 487, 488 (9th Cir. 1984).  Here, the rules on
which Olsen relies are simply not applicable to this situation, and
the admissibility of the conviction and sentence is fully
consistent with the nature of a nolo contendere plea and the
policies underlying its use.
         The defendants were correct, then, that the nolo
conviction and sentence were admissible.
B.  Consequences of Admissibility of Nolo Sentence and Conviction
         The second, and more difficult, question is whether, once
evidence of Olsen's manslaughter conviction and sentence are
admitted, his claim for incarceration-based damages can survive.  
We think several related doctrines require a finding that the valid
manslaughter conviction and sentence bar, as a matter of law, an
action for damages for imprisonment.
         In analyzing the question presented, we look to a useful,
but not exact, analogy to situations in which a defendant serves a
period of imprisonment for two crimes or two counts of conviction
that result in the imposition of concurrent sentences.  If one
conviction is vacated, the defendant has nevertheless been
imprisoned pursuant to a valid sentence.  He may not then bring a
1983 action for damages for his imprisonment.  In such a case,
it is clear that whatever the wrongful act involved in securing the
invalid conviction, that act was not the "but for" cause of the
incarceration, because without that act the plaintiff would have
been incarcerated in any event pursuant to the valid conviction.  
See Keeton et al., Prosser and Keeton on the Law of Torts  41, at
266 (5th ed. 1984) ("[T]he defendant's conduct is not a cause of
the event, if the event would have occurred without it."); cf.
United States v. Bramble, 925 F.2d 532, 534 (1st Cir. 1991)
(upholding sentence where the term represented "a valid sentence,
tied to (i.e., concurrent with) an invalid sentence").
         This analogy is made inexact by the fact that it is
possible for Olsen to use his nolo plea to construct an argument
for "but for" causation.  The argument would proceed as follows:
the defendants' wrongful acts caused the murder conviction, the
murder conviction caused the incarceration, the invalidation of the
murder conviction caused the prosecutors to offer Olsen a plea on
a manslaughter charge, and the fact that Olsen had already served
time pursuant to the invalid murder conviction caused Olsen to
agree to the nolo plea and a sentence of time served.   
         This tenuous chain is not sufficient to allow Olsen to
collect incarceration-based damages, however.  As a series of
additional analogies will demonstrate, the policies favoring the
finality of valid criminal convictions and sentences and protecting
them from collateral attack through civil suit dictate against
allowing  1983 liability for damages for imprisonment here.  Thus,
whether the problem is viewed as one of the limits of  1983
actions or of proximate cause, we conclude that incarceration-
related damages are not available to Olsen under these
circumstances.            
         One analogy is to guilty pleas.  In the  1983 context,
courts have held that valid guilty pleas preclude later claims of
constitutional violations because they represent "a break in the
chain of events which has preceded [the plea] in the criminal
process."  Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also
Haring v. Prosise, 462 U.S. 306, 321 (1983) ("[W]hen a defendant is
convicted pursuant to his guilty plea rather than a trial, the
validity of that conviction cannot be affected by an alleged Fourth
Amendment violation because the conviction does not rest in any way
on evidence that may have been improperly seized.  State law treats
a guilty plea as 'a break in the chain of events . . . .'" (quoting
Tollett, 411 U.S. at 267)).  These cases point toward a policy of
honoring the finality of a criminal conviction by viewing a
conviction entered pursuant to a valid plea as the sole legal cause
of the incarceration imposed in the sentence.  
         In these circumstances, there is no reason that Olsen's
nolo plea should be treated differently from a guilty plea.  A nolo
plea differs from a guilty plea only in that it is not an admission
of guilt and cannot be used against the pleader in a later
proceeding to prove the underlying facts of the crime.  But as to
the validity of the sentence rendered, a nolo plea is the
equivalent of a guilty plea.  See Alford, 400 U.S. at 36 n.8;  
Ingersoll, 14 N.E. at 450 ("A plea of nolo contendere, when
accepted by the court, is, in its effect upon the case, equivalent
to a plea of guilty."); Fed. R. Crim. P. 11(e)(6) advisory
committee's notes, 1974 amendment ("A plea of nolo contendere is,
for purposes of punishment, the same as the plea of guilty.").    
         The court in Pete v. Metcalfe, 8 F.3d 214 (5th Cir.
1993), drew a similar conclusion.  In that case, a former inmate,
who pled nolo to reduced charges after his first conviction was
overturned, brought a  1983 action against various officials
charging false imprisonment and malicious prosecution.  See id. at
215-16.  The court held that no action for false imprisonment could
lie "where the detention was executed by virtue of legally
sufficient process duly issued by a court of competent
jurisdiction."  Id. at 218-19; see also id. at 219 ("This is true
where an arrest is pursuant to a validly issued arrest warrant, and
must also be true where, as here, Pete's two-year imprisonment was
the result of a judgment of conviction by a court with jurisdiction
over him.") (citation omitted); 35 C.J.S. False Imprisonment  27,
at 660 (1960) ("An action for false imprisonment may not be
maintained where an arrest or detention is made by virtue of
process, legally sufficient in form, and duly issued by a court or
official having jurisdiction to issue it.").  
         Another analogy is to the rule of Heck v. Humphrey,  
which provides that, at least while a defendant is still
imprisoned, he may not bring a  1983 action to attack his
conviction.  See Heck, 512 U.S. at 486-87; cf. Figueroa v. Rivera,
147 F.3d 77, 82 (1st Cir. 1998).  Addressing the proper channeling
of litigation between habeas corpus and  1983, see Heck, 512 U.S.
at 480-81, the Heck Court drew an analogy to the common law cause
of action for malicious prosecution, see id. at 484.  To bring a
malicious prosecution claim, a plaintiff must first show that the
prior criminal proceeding upon which the claim is based has been
terminated in his favor.  See id.; Meehan v. Town of Plymouth, 167
F.3d 85, 90-91 (1st Cir. 1999).  Without such a requirement,
"parallel litigation over the issues of probable cause and guilt"
would arise and inconsistent adjudications could result "in
contravention of a strong judicial policy against the creation of
two conflicting resolutions arising out of the same or identical
transaction."  Heck, 512 U.S. at 484 (quoting Speiser et al.,
American Law of Torts  28:5, at 24 (1991)) (internal quotation
marks omitted).  Heck imposed a limit on the availability of  1983
actions by adopting a favorable termination requirement similar to
that found in the malicious prosecution context.  See id. at 483-86
(limiting the scope of  1983 based on "concerns for finality and
consistency" and "the hoary principle that civil tort actions are
not appropriate vehicles for challenging the validity of
outstanding criminal judgments").  While we expressly decline to
reach the Heck analysis relied upon by the district court, we
believe that the policy that animates the limits on the malicious
prosecution cause of action and Heck's adoption of a favorable
termination requirement counsels against allowing Olsen to use this
1983 action to impugn the validity of his sentence.  Allowing
Olsen to call into question, through a civil jury's award of
damages for incarceration, the legal validity of an unimpeached
criminal sentence would lead to inconsistency and an undermining of
the criminal process.  Cf. Figueroa, 147 F.3d at 81 ("[C]ivil tort
actions are not appropriate vehicles for challenging the validity
of outstanding criminal judgments." (quoting Heck, 512 U.S. at 486)
(internal quotation marks omitted)).  
         The final analogy is to the established policy of
enforcing plea bargains.  Absent a showing that a plea was in some
way constitutionally infirm, parties must be held to the terms of
the plea so as to ensure society's interest in the integrity of the
system of compromise resolution of criminal charges.  See
Blackledge v. Allison, 431 U.S. 63, 71 (1977) ("[T]he guilty plea
and the often concomitant plea bargain are important components of
this country's criminal justice system. . . . [The] advantages can
be secured, however, only if dispositions by guilty plea are
accorded a great measure of finality."); cf. Town of Newton v.
Rumery, 480 U.S. 386, 393-94 (1987).   
         Here Olsen pled nolo as part of a plea bargain with the
prosecution, and he now attempts to enforce a bargain that is quite
different from the bargain society offered him.  The English
translation of the Latin phrase "nolo contendere" is "I will not
contest it."  Black's Law Dictionary 1048 (6th ed. 1990) (internal
quotation marks omitted).  By pleading nolo, Olsen agreed to a
sentence of time already served as the punishment for the
manslaughter conviction.  While he did not admit to committing
manslaughter, he did, by pleading nolo, agree that both his
sentence and conviction were valid.  Cf. Cochenour v. Cochenour,
888 F.2d 1244, 1246 (8th Cir. 1989) (holding that the plaintiff's
voluntary election "was the legal cause of the sale" and that such
election breaks the chain of causation between his injuries and the
allegedly invalid procedures).  There are compelling reasons to
enforce this bargain: permitting a party who does not contest the
court's authority to punish him to bring a subsequent proceeding in
which he is able to claim that his punishment was improper would
undermine the finality of plea bargains and jeopardize society's
interest in a system of compromise resolution of criminal cases.
         Allowing the incarceration-related damages Olsen seeks
would undermine the availability of nolo pleas.  Although nolo
pleas represent a compromise on the question of guilt, society
accepts them because they produce convictions and sentences that
are final.  Faced with the prospect of continuing litigation and a
possible damages award, prosecutors will not agree to nolo pleas,
making such pleas less available to defendants.  As is demonstrated
in this case, nolo pleas are of benefit to defendants: Olsen
avoided a trial, a possible conviction, and the potential for
additional imprisonment.  Ensuring the continuing availability of
nolo pleas requires that we not allow Olsen to avoid the full force
and effect of his plea.
         These policies of finality and the prevention of
collateral attack on criminal convictions dictate against
permitting Olsen to recover damages for his imprisonment.  Olsen is
not free to question the finality of his valid imprisonment by an
action for incarceration-based damages.  Olsen's valid manslaughter
conviction and sentence are the sole legal cause of his
incarceration.  
         The doctrines and cases upon which we rely can be viewed,
for purposes of application to this case, as policy-based limits on  
1983 actions.  See, e.g., Heck, 512 U.S. at 486; Harlow v.
Fitzgerald, 457 U.S. 800, 813-14 (1982) (relying on policy
considerations and "a balance between the evils" in resolving
questions regarding the scope of the immunity doctrine); Wood v.
Strickland, 420 U.S. 308, 318 (1975); Wolff v. McDonnell, 418 U.S.
539, 568, 571-72 (1974) (striking a "balance of interests" in
defining due process rights under  1983); Montgomery v. De Simone,
159 F.3d 120, 124 (3rd Cir. 1998) (stating that "the extent to
which the common law rule is rooted in history and reason and
whether the policies it serves are compatible with the purposes of
section 1983" are important in determining the limits on  1983
actions); Pete, 8 F.3d at 218.  Alternatively, they could be viewed
as issues of proximate cause under  1983, breaking any causal link
between the imprisonment for which damages are sought and the
unconstitutional actions of the defendants in withholding a witness
statement.  Under both characterizations, this is a matter of law
for the court to determine.  See Keeton et al., supra,  42, at 273
(noting that proximate cause, "[u]nlike the fact of
causation, . . . is primarily a problem of law"); see also Himba v.
Odegaard, 769 F.2d 1147, 1156 (7th Cir. 1985) (stating that the
court has "the exclusive function to declare the existence or non-
existence of rules . . . which restrict the responsibility of the
tort-feasor short of making him liable for harm of which his
actions are a legal cause").
         Accordingly, judgment as a matter of law for the
defendants on damages for incarceration was proper -- and this is
exactly the conclusion that the district court reached, albeit
through different reasoning.  See Rodrguez-Cirilo, 115 F.3d at 53
(affirming grant of summary judgment in  1983 action "based on
plaintiffs' failure to demonstrate causation"); Malave-Felix v.
Volvo Car Corp., 946 F.2d 967, 972-73 (1st Cir. 1991) (affirming
directed verdict for defendant based on plaintiff's failure to
prove causation).  There was no error in the district court's
vacating the original jury verdict.           
                             III
         It was well within the realm of possibility for the jury
in the second damages trial to have awarded Olsen substantial
compensatory damages for injuries associated with his murder trial
and conviction, and to have awarded substantial punitive damages
based on the nature of the defendants' actions.  See, e.g., Goodwin
v. Metts, 885 F.2d 157, 160, 163-67 (4th Cir. 1989) (upholding
substantial award to  1983 plaintiffs who were never
incarcerated), overruled in part on other grounds by Albright v.
Oliver, 510 U.S. 266, 270, 271 (1994) (plurality opinion).  This
did not come to pass, however, and Olsen, having pinned his hopes
on the reinstatement of the first verdict, makes a lesser challenge
to the scope and conduct of the second trial.  This challenge
fails.
         The new trial that actually took place, in which the
district court did not permit evidence of damages stemming from the
incarceration (as opposed to the murder trial and conviction), is
essentially the same trial that would take place on any remand from
our determinations.  The district court has, in effect, already
completed the work that would result from a remand and presented us
with two verdicts from which to choose, depending on our resolution
of a number of underlying issues.  Cf. Galdieri-Ambrosini v.
National Realty & Dev. Corp., 136 F.3d 276, 282 (2d Cir. 1998)
(explaining that if a district court permits a case to go to the
jury and thereafter enters a judgment as a matter of law that is
contrary to the verdict, "the need for a second trial will be
avoided" even if the court of appeals disagrees with the judgment).  
Indeed, several aspects of the second trial were advantageous to
Olsen: the district court granted a new trial only on damages,
rather than on both liability and damages, and it permitted Olsen
to have another opportunity to convince a jury of the propriety of
an award of punitive damages.
         Olsen belatedly contends that the scope of the damages
trial was too narrow because the district judge did not permit
evidence of the emotional injury caused by Olsen's belief during
the period of his incarceration that he would spend the rest of his
life in jail.  This argument is of no avail.  Olsen did not raise
this argument regarding the scope of the trial in his initial brief
on appeal and no more than hinted at it in his reply brief, and it
is therefore waived.  See, e.g., United States v. Brennan, 994 F.2d
918, 922 n.7 (1st Cir. 1993) (noting the "well settled" rule that
legal arguments made for the first time in an appellant's reply
brief are tardy).  Further, Olsen has not provided us with an
adequate record on appeal to review this issue, even if it had been
preserved.
         For the foregoing reasons, we affirm the judgment of the
district court on the basis of alternative reasoning.   No costs
are awarded.

</body>

</html>