[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (No. 113)
The motion now before the Court raises an issue involving the responsibilities of the Department of Correction with respect to a sentenced prisoner in its custody after a trial court has granted that prisoner's petition for a writ of habeas corpus. The issue has arisen in a confusing way both because the complaint in this case, drafted by a prisoner acting pro se, combines common law and constitutional theories of liability and because the prisoner's argument, by subsequently obtained counsel, addresses factual issues identified neither in the complaint nor in any evidentiary submission.
The action was commenced by service of process on September 24, 1998. The plaintiff, Angelo D. Joyner, was, at the time, incarcerated in the CT Page 12215 Cheshire Correctional Institution ("CCI"). Four persons are named as defendants: George Wezner, the Warden of CCI; Captain Muccino, a Unit Manager employed by CCI; Craig Gallick, a counselor employed by CCI; and Christopher Alexy, an Assistant State's Attorney. Each defendant is sued in both his personal and official capacities.
The complaint, which is dated July 17, 1998, is initially asserted to be a civil rights action, brought pursuant to 42 U.S.C. § 1983. The complaint subsequently asserts that its claim is one of "wrongful imprisonment." The complaint contains two counts, of which the first is by far the most detailed. The first count alleges that the plaintiff was granted a new trial by Rittenband, J. on September 19, 1997, and that, on January 5, 1998, Rittenband, J., set bond in the amount of $350,000 cash or surety. The gist of the first count, as I understand it, is that the plaintiff, who was then incarcerated in CCI, had to be sent to "the County Jail" in order to be bonded and that the correctional defendants failed to send him to such a facility. This failure was allegedly prompted by Alexy, who, it is said, informed the correctional defendants that "the Plaintiff was not unsentenced and had to remain at Cheshire as a sentenced inmate." (Emphasis in original.) The plaintiff claims that, because he was not sent to a "County Jail," he was unable to post bond. The second count sets forth no additional theory of liability, but contends that the plaintiff was unable to receive social security during the period of his claimed illegal confinement and claims the loss of social security as additional damages.
The defendants filed an answer, along with numerous special defenses on October 2, 1998. On January 18, 2000, they filed the motion for summary judgment now before the Court, together with numerous affidavits and other supporting documents. The plaintiff (who, as mentioned, is now represented by counsel) has filed no opposing affidavits or documents supporting his claims. See Practice Book § 17-45. The motion was heard on October 2, 2000.
Many of the dispositive facts in this case are established by judicial notice of other Superior Court and files and related appellate decisions. State v. Lenihan, 151 Conn. 552, 554, 200 A.2d 476 (1964). See Conn. Evidence Code § 2.1(c)(2). Other facts are established by the unrebutted documentary submissions of the defendants in this case. The plaintiff was convicted of one count of the crime of kidnapping in the first degree, one count of the chine of assault in the first degree, and three counts of the crime of sexual assault in the first degree. The convictions occurred as the result of a trial held in the Superior Court for the Judicial District of New Haven. State v. Joyner, No. 303622 (N.H.J.D.). On July 26, 1991, the Court, Schimelman, J., ordered a total effective sentence of 50 years. A mittimus recording this sentence was CT Page 12216 transmitted to the Department of Correction, which had custody of the plaintiff On May 4, 1993, the Supreme Court of Connecticut affirmed the plaintiff's conviction. State v. Joyner, 225 Conn. 450, 625 A.2d 791
(1993).
The plaintiff subsequently filed a petition for writ of habeas corpus in the Superior Court for the Tolland Judicial District. Joyner v.Warden, No. CV93-1706 (Tolland J.D.). From an early date, he was at all times represented by counsel both in that proceeding and in the habeas appeal that followed. On September 19, 1997, the habeas court, Rittenband, J., found the issues for the plaintiff. It will be helpful to quote the final paragraph of Judge Rittenband's decision in full:
 Petitioner's petition for Habeas Corpus is hereby granted, the convictions and the sentences imposed in the criminal trial known as State v. Angelo Joyner, DN 89-303622, Judicial District of New Haven at New Haven are hereby vacated, and the case is remanded to the trial court for a new trial. The petitioner is ordered conditionally released from confinement. He shall be absolutely discharged from confinement unless within one hundred twenty days from the date of this Memorandum of Decision, the State's Attorney for the Judicial District of New Haven proceeds with a retrial of the Petitioner. In the event of an appeal from this decision by the Respondent, these orders are stayed until a final decision is rendered on such appeal.
On September 23, 1997, the respondent filed a petition for certification from the habeas decision. On September 30, 1997, the petition was granted by the Court. On October 17, 1997, the respondent filed a timely appeal.
On January 5, 1998, the habeas court, Rittenband, J., ordered "[b]ail set in the amount of $350,000 — cash or surety." No bail was ever posted during the course of the habeas appeal. On October 8, 1999, the plaintiff, through counsel, filed a motion for bond reduction in the habeas court. That motion states that, "Petitioner has sufficient resources to post a bond however not in an amount the Court imposed." The motion was never acted upon.
On November 2, 1999, the Appellate Court affirmed Judge Rittenband's decision. Joyner v. Commissioner, 55 Conn. App. 602, 740 A.2d 424
(1999). The respondent did not petition for certification. Under these circumstances, proceedings to enforce or carry out the judgment were stayed until the time to file the petition had expired. Practice Book CT Page 12217 § 84-3. That stay expired on November 22, 1999.
On November 16, 1999 (while the proceedings to enforce the habeas judgment were still stayed), Attorney Brian Carlow an Assistant Public Defender, filed an appearance for the plaintiff in his criminal case in the New Haven Judicial District. The plaintiff's criminal file, State v.Joyner, supra, shows that Fasano, J. signed writs of habeas corpus ad respondendum ordering the plaintiff to be brought to the New Haven courthouse on November 10, 1999; November 17, 1999; November 23, 1999; November 24, 1999; and December 15, 1999. On December 13, 1999, the State filed a motion to set trial bond. On December 22, 1999, Thompson, J. granted that motion and set bond at $200,000. The plaintiff was, however, unable to make bond until February 28, 2000, when Licari, J., following a pretrial evidentiary ruling, reduced the bond to a promise to appear.
Against this factual backdrop, the identification of any actions or inactions by any of the defendants here that even arguably violated any of the plaintiff's constitutional or common law rights is shrouded in considerable mystery. The complaint (which, as mentioned, is dated July 17, 1998) seems to allege three related but analytically distinct wrongs: (1) that the plaintiff was wrongly denied classification as a pretrial detainee; (2) that the plaintiff was wrongly denied confinement in a "County Jail"; and (3) that the defendants prevented the plaintiff from posting bond. The evidence clearly shows that each of these claims is without merit.
First, in spite of the plaintiff's claims to the contrary, he was not entitled to pretrial detainee status at any time prior to November 22, 1999. This includes the entire period up to the date of the complaint. Judge Rittenband's September 19, 1997 order vacating the plaintiff's convictions was, by its own terms, stayed by the respondent's timely appeal. Consequently, the plaintiff remained a sentenced prisoner throughout the period in question. Attorney Alexy's alleged advice to the correctional defendants that the plaintiff "was not unsentenced" was, if given, correct.
Second, the plaintiff had no constitutional, statutory, or common law right to confinement in any particular correctional facility at any time before or after November 22, 1999. The plaintiff was, at all times, in the custody of the Department of Correction, which consists of numerous correctional institutions and community correctional centers. Conn. Gen. Stat. § 18-78. Although pretrial detainees are ordinarily confined in community correctional centers and sentenced inmates are ordinarily confined in correctional institutions, there is no statutory or constitutional rule requiring this. A sentenced prisoner may be confined CT Page 12218 in a community correctional center, and a pretrial detainee may be confined in a correctional institution. All of this is left to the discretion of the Commissioner of Correction and his designees. Conn. Gen. Stat. § 18-81. The Constitution does not prohibit such practices, as long as the State is not attempting "to punish a detainee for the crime for which he was indicted via preconviction holding conditions." Sandin v. Conner, 515 U.S. 472, 484 (1995). The plaintiff here has submitted no affidavit or other evidence suggesting that the conditions in which he was held after November 22, 1999 amounted to punishment. There is, of course, no hint of any such claim in his July 17, 1998 complaint.
Third, the evidence conclusively shows that the defendants here did nothing to prevent the plaintiff from posting bond. Bail in Connecticut is deposited with the clerk of the court, not with the Department of Correction. Conn. Gen. Stat. § 54-66(a). In any event, the plaintiff's motion for bond reduction, filed in the habeas court on October 8, 1999, states that his resources at that time did not permit him to "post a bond . . . in an amount the Court imposed." The plaintiff was similarly unable to post the $200,000 bond set by Thompson, J. on December 22, 1999. He was able to obtain release only when Licari, J. reduced his bond to a promise to appear on February 28, 2000. The plaintiff admits in his brief that "the defendants do effectively establish the plaintiff's inability to post bond."
The plaintiff's remaining suggestion is that the defendants violated his rights after he attained pretrial status on November 22, 1999. This theory is difficult to square with the complaint, which complains of actions occurring only prior to July 17, 1998. Even if the pro se complaint is broadly construed, however, the question of what the defendants here are claimed to have wrongfully done after November 22, 1999, has simply not been answered. It is clear, for reasons already stated, that the defendants did nothing to prevent the plaintiff from posting bond during this time. It is also clear that nothing in the law prevented the plaintiff from being held in a correctional institution as a pretrial detainee. The only thing that the law prohibited was an attempt to punish the plaintiff during this time, and the plaintiff has submitted no evidence suggesting that he was punished.
Under these circumstances, the plaintiff has no viable legal claim against any of the four defendants here. He has no viable constitutional claim, because the constitution allows reasonable classification and management of sentenced prisoners and prohibits only the attempted punishment of pretrial detainees. Sandin v. Conner, supra,515 U.S. at 484-85. Consequently, his civil rights action cannot be maintained.
CT Page 12219 The plaintiff's common law claim of "wrongful imprisonment" fares no better. "False imprisonment is the unlawful restraint by one person of the physical liberty of another." Rivera v. Double A Transportation,Inc., 248 Conn. 21, 31, 727 A.2d 204 (1999). (Internal quotation marks and brackets deleted; emphasis added.) The plaintiff's incarceration prior to November 22, 1999 — which, it must be stressed, is the only incarceration addressed in the complaint — was not unlawful. The plaintiff was held until that date pursuant to the mittimus issued by the Superior Court in 1991. "The mittimus is the warrant by virtue of which a convict is transported to and rightly held in prison." State v. Lenihan,supra, 151 Conn. at 554-55. By statute, "such mittimus shall be sufficient authority to the officer to commit such person, and to the warden or community correctional center administrator to receive and hold him in custody." Conn. Gen. Stat. § 54-97. An action for false imprisonment is not sustainable under these circumstances, because the correctional officials "acted on process legally sufficient in form and duly issued by a court or officer having jurisdiction to issue it."Fletcher v. McMahon, 121 F.2d 729, 731 (D.C. Cir.), cert. denied,314 U.S. 662 (1941). See Pete v. Metcalfe, 8 F.3d 214, 219 (5th Cir. 1993), and authorities cited therein.
There is a nice question concerning the authority by which the plaintiff was held between November 22, 1999, and December 22, 1999, the date on which Thompson, J. set pretrial bail at $200,000. (There can be no question that the plaintiff was lawfully detained in lieu of bail following that latter event; Conn. Gen. Stat. § 54-53a.) During this interim period, the plaintiff was in something of a legal Never-Never Land. The Department of Correction had a mittimus in its files, but the mittimus was no longer valid. The $350,000 habeas appeal bond set by Rittenband, J. was no longer operative, since the habeas appeal was over. In functional terms, the plaintiff was a pretrial detainee, but no pretrial bond had been set. How should his confinement during this interim period be treated?
The issue just referred to is unmentioned in the complaint. It appears that the plaintiff's principal grievance is the place of his confinement rather than the fact of confinement itself. For reasons already discussed, however, the Commissioner of Correction and his designees have ample discretionary authority to confine an inmate — pretrial or sentenced — in any correctional facility in the State. If correctional officials have authority to confine an inmate, they cannot sensibly be held liable for the tort of false imprisonment because they have chosen to confine him in one correctional facility rather than another.
Under the circumstances here, moreover, the plaintiff can fairly be CT Page 12220 considered to have waived any claim against the defendants here that his confinement during the period November 22, 1999, to December 22, 1999, was itself unlawful. As discussed above, the plaintiff was represented by a public defender throughout this interim period. He was brought to court on November 23 and 24 and December 15, 1999 (in addition to two previous dates). Had he wished at any time during this period to move for the vacation of his existing mittimus or the setting of bond, he easily could have done so. He did not. He plainly acquiesced in the fact of his confinement for the time being. No facts have been alleged, much less submitted in proper affidavit form, that would remotely justify holding the defendants here liable for the fact of his confinement during this interim period.
At a minimum, the actions of the defendants here were not wanton, reckless, or malicious. Under these circumstances, they cannot be personally liable for damage or injury caused in the discharge of their duties. Conn. Gen. Stat. § 4-165.
There is, consequently, no occasion here to address the issue of the Department of Correction's responsibility to a hypothetical inmate who has had his sentence vacated but thereafter continues to languish in prison forgotten by all. This is clearly not such a case. The plaintiff here was represented by counsel and transported to court numerous times. He did nothing during this interim period to challenge the fact of his confinement. Under these circumstances, he cannot subsequently seek to hold correctional and prosecutorial officials liable for that very fact.
The motion for summary judgment is granted.
Jon C. Blue Judge of the Superior Court