**William Anderson FEAR,**

v.

**DIBOLL CORRECTIONAL CENTER, et al.**

**Civil Action No. 9:08cv51.**

United States District Court,
E.D. Texas,
Lufkin Division.

Oct. 14, 2008.

William Anderson Fear, Venus, TX, pro se.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

JUDITH GUTHRIE, District Judge.

Plaintiff William Anderson Fear, an inmate previously confined at the Diboll Correctional Center, proceeding *pro se* and *in forma pauperis,* filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on March 5, 2008. The Plaintiff complained about the medical care he had received for a fungus underneath his toenails and right thumb nail. After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985), to consider the Plaintiff's claims. The hearing was conducted on October 9, 2008. Regional Grievance Coordinator Chip Satterwhite, Warden Dewayne Dewberry and Nurse Barbara Hughes attended the hearing in order to answer any questions the Court may have concerning prison policy or the Plaintiff's records.

Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the Plaintiff. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991). The Plaintiff gave the Court permission to review his prison records.

The Plaintiff testified that the fungus was actually in the bed of his toenails and right thumb nail. The fungus causes his nails to arch and become ingrown. The condition makes his nails thick and hard to cut. He has to shower for awhile just to make his toenails soft enough to cut. He described the condition as really uncomfortable. He started asking for medication for the condition in March, 2007. He was prescribed Tolnaftate cream even though it stated on the box that it was not effective for nail fungus. He first received Tolnaftate while confined at the Byrd Unit. He received the same treatment the entire time he was confined at the Diboll Correctional Center. He asked for proper medication and was told that it was too expensive and took months to cure. He testified that he was confined there for about sixteen months. He was transferred to another unit in May, 2008.

Nurse Hughes testified from the Plaintiff's medical records. She confirmed that he submitted many complaints to the medical department about the fungus. She noted that the normal protocol is to use Tolnaftate. The medical records indicate that Tolnaftate was ineffective, thus the Plaintiff was referred to the dermatology department at University of Texas Medical Branch in Galveston ("UTMB–Galveston"), which prescribed Lotrimin cream and Clotrimazole tablets. She testified that the fungus is common. Tolnaftate cream is routinely prescribed, although it is not very effective. There is an oil based alternative but it is not formulary. It has to be

specifically prescribed on a case by case basis. UTMB–Galveston recommended the alternative. Dr. Abbas Khoshdel prescribed the alternative, but it was up to the regional pharmacist whether to honor the prescription. She did not see any record that it was ordered for the Plaintiff.

The Plaintiff testified that he saw Dr. Perry, a dermatologist, who prescribed Lotrimin for a year. Despite Dr. Perry's prescription, unit personnel never gave it to him. Physician's Assistant Smith told him that they would not order it. Nurse Byron told him that it was against UTMB policy. A response to a grievance likewise told him it was against policy. The Plaintiff testified that he sued Dr. Khoshdel because he was the doctor at the Diboll Correctional Unit and he never ordered the medication. He testified that the Court could review his prison records concerning this matter.

The records reveal that the Diboll Correctional Center was the Plaintiff's assigned unit from May, 2007, to May, 2008. The first entry about the problem was recorded by Byrd Unit medical personnel on April 7, 2007. Fungus to the nailbed was observed, and part of the thumbnail was removed. A Tolnaftate solution was prescribed. On August 21, 2007, a clinic note entered at the Diboll Correction Center indicated that Tolnaftate cream was prescribed per nursing protocol. On September 24, 2007, Nurse Thompson noted the Plaintiff's complaints about his nail fungus. The Plaintiff stated that Tolnaftate does not work and it says so right on the box. She indicated that she told the Plaintiff that there is no treatment for nail fungus, and she added that a referral to a doctor was not indicated at that time. The medical records reveal that Dr. Khoshdel prescribed Tolnaftate solution for ninety days beginning on September 29, 2007. On October 11, 2007, the Plaintiff submitted a grievance stating that the medication

did not work and that he needed medication in a pill form. The response indicated that he was prescribed the topical solution for ninety days. If there was no improvement after ninety days, then he should submit another sick call request and the doctor could re-evaluate him for possible non-formulary medication. The response to the Step 2 grievance, dated November 9, 2007, provided the same basic answer. A clinic note, dated November 16, 2007, indicated that the Plaintiff complained that he was being denied medical care due to cost. The response indicated that he was not being denied medication due to cost and that he should use the antifungal solution as prescribed. On January 18, 2008, Dr. Khoshdel examined the Plaintiff and observed a severe nail condition described as onycomycosis. The Plaintiff was referred to dermatology. The referral noted that the Plaintiff had severe onycomycosis and that Tolnaftate used for ninety days had been ineffective. Dr. Khoshdel specified that his condition did not respond to topical treatment. An entry by the dermatology department, dated March 18, 2008, noted that the Plaintiff had been referred for onycomycosis. Lotrimin cream and Ketoconazole tablets were ordered. When the Plaintiff returned to the Diboll Correctional Center, a nurse sent a note to Dr. Khoshdel alerting him to the recommendation. On March 21, 2008, Dr. Khoshdel issued an instruction to "please send nf {sic} request for clotrimazole tablet as they ordered." The medical records do not include any other entries about Lotrimin cream or the tablets.

In evaluating the Plaintiff's claims, it is initially noted that he sued the Diboll Correctional Center, UTMB, Dr. Abbas Khoshdel and TDCJ. The provisions of 42 U.S.C. § 1983 state that every "person" who acts under color of state law to

deprive another of constitutional rights shall be liable to the injured party. Section 1983 suits may, for example, be used to sue a state employee using or abusing power that is possessed by virtue of state law to violate a person's constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *accord, Brown v. Miller*, 631 F.2d 408, 410–11 (5th Cir.1980). The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir.1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court thus upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.*

> "In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity. The Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law. *See American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir.1993). To meet the *Ex parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *See Saltz v. Tennessee Dept't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir.1992).

*Aguilar*, 160 F.3d at 1054. *See also Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 604–05 (5th Cir.2008). The Texas prison system is immune from liability. *Ruiz v. Estelle*, 679 F.2d 1115, 1137 (5th Cir.1982); *Pete v. Metcalfe*, 8 F.3d 214, 216 (5th Cir.1993). The only person named as a defendant in this lawsuit is Dr. Abbas Khoshdel. The Plaintiff may not bring a § 1983 lawsuit against the Diboll Correctional Center, UTMB and TDCJ. The claims against the Diboll Correctional Center, UTMB and TDCJ fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact, thus the claims against them must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

■ Thus the question for the Court is whether the Plaintiff has alleged facts that support a basis for a potentially meritorious civil rights lawsuit against Dr. Abbas Khoshdel. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105–07, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir.1989). In *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; ... the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir.1994).

■ In *Domino v. Texas Department of Criminal Justice,* the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107, 97 S.Ct. 285. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970.

239 F.3d 752, 756 (5th Cir.2001). Unsuccessful medical treatment, standing alone, does not give rise to a civil rights action. *Johnson v. Treen,* 759 F.2d at 1238.

The Court has some doubts whether nail fungus or onycomycosis constitutes a serious medical need. The Court's review of the case law revealed that the Fifth Circuit has not addressed the issue. Only three cases were found that addressed the issue, all of which were district court decisions outside the Fifth Circuit. The decisions are not authority, but they are instructive. In *Griffen v. Cook,* No. 02–717–AS, 2005 WL 1113830 (D.Or. May 10, 2005), the court addressed a number of complaints by an inmate, including nail fungus. He had a prescription for liquid Tolnaftate when he arrived at the unit. Initially, he was not given enough of the liquid. The liquid Tolnaftate was subsequently removed from the pharmacy formulary, and he was told that he could buy Tolnaftate cream in the commissary. The court concluded that the problems raised by the plaintiff did not amount to a serious medical need, and the claim was dismissed. The plaintiff did not appeal the decision. In *Villanueva–Monroy v. Hobart,* No. 05–C–214–C, 2005 WL 1364398 (W.D.Wis. June 7, 2005), a federal inmate complained that he was not given oral medication since topical medication did not work. The court noted that the *Harvard Medical School Family Health Guide* noted serious side effects from oral treatment, including liver damage resulting in liver failure and death or congestive heart failure. The court concluded that health officials may weigh the serious side effects against the potential benefit of improving a relatively minor conditions. The claim was dismissed for failure to state a claim upon which relief may be granted because the facts did not show deliberate indifference to a serious medical need. The plaintiff did not appeal the decision. In *White v. Boydston,* No. 4:05cv2345SNL, 2007 WL 522312 (E.D.Mo. Feb.14, 2007), the plaintiff complained that Clotrimazole topical cream was ineffective. A doctor scheduled him for surgery to have a toenail removed, but the surgery never occurred. A second doctor examined the plaintiff and concluded that surgery was unnecessary. By nine months later, the plaintiff had developed dark discoloration to the first and fifth digits of the right foot. A doctor prescribed Tolnaftate cream. The medical records went on to show an ongoing problem, which medical personnel treated but the problem was never resolved. The plaintiff complained that he was not provided oral medication, but the court noted that medical personnel decided against it. The trial court concluded that the facts did not support a conclusion of deliberate indifference and that the plaintiff's claim about not receiving oral medi-

cation was merely an unactionable difference of opinion. The Eighth Court of Appeals affirmed the dismissal of the deliberate indifference claim. *White v. Boydston,* 270 Fed.Appx. 456 (8th Cir. 2008).

 In the present case, the facts as alleged by the Plaintiff do not show that his condition was so significant that it amounted to a serious medical need. Moreover, the facts as alleged and developed reveal that Dr. Khoshdel was responsive to the Plaintiff's problem. He prescribed Tolnaftate solution for ninety days beginning on September 29, 2007. The Plaintiff was told to follow instructions and submit a new sick call request after ninety days if there was no improvement. Dr. Khoshdel's actions showed that he was following protocol. When the condition did not improve, the Plaintiff complained. On January 18, 2008, Dr. Khoshdel observed that the condition had not improved and that Tolnaftate had been ineffective, thus he referred the Plaintiff to a dermatologist. On March 18, 2008, the dermatologist ordered Lotrimin cream and Ketoconazole tablets. On March 21, 2008, Dr. Khoshdel issued instructions to follow the order, although there is no indication that his instructions were carried out. These facts do not support a conclusion that Dr. Khoshdel was deliberately indifferent. There is no basis for a lawsuit against him because the treatment provided was unsuccessful or because someone did not follow his instructions to provide the Plaintiff with Lotrimin cream and tablets. The facts concerning Dr. Khoshdel fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claim against him should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED.**